1    IN THE UNITED STATES DISTRICT COURT

2    MIDDLE DISTRICT OF NORTH CAROLINA

3

UNITED STATES OF AMERICA      )
4                             )  Case No. 1:12CR23-1
     vs.                      )
5                             )  Greensboro, North Carolina
ANTWAN O'BRIAN LLOYD,         )
6                             )  August 21, 2012
     Defendant.               )
7    _____)  2:40 p.m.

8

9                   TRANSCRIPT OF SENTENCE

10      BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.

11             UNITED STATES DISTRICT JUDGE

12

APPEARANCES:
13

For the Government:   TERRY M. MEINECKE, AUSA
14                    Office of the U.S. Attorney
                      101 S. Edgeworth Street, 4th Floor
15                    Greensboro, North Carolina 27401

16

17  For the Defendant:   MARK A. JONES, ESQUIRE
                      Bell Davis & Pitt, P.A.
18                    POB 21029
                      Winston-Salem, NC 27120-1029
19

20

21

Court Reporter:       Joseph B. Armstrong, RMR, FCRR
22                    W. Market, Room 101
                      Greensboro, NC  27401
23

24        Proceedings reported by stenotype reporter.
       Transcript produced by Computer-Aided Transcription.
25

US v. Lloyd - Sentence - August 21, 2012

1           Greensboro, North Carolina

2           August 21, 2012

3           (At 2:40 p.m., proceedings commenced.)

4           MR. MEINECKE:  Good afternoon, Your Honor.

5           THE COURT:  Good afternoon, Mr. Meinecke.

6           MR. MEINECKE:  This next matter is the United

7    States versus Antwan O'Brian Lloyd, Case No. 1:12CR23-1.

8    Mr. Jones is present on behalf of defendant.  This matter is

9    on for sentencing.

10          MR. JONES:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon, Mr. Jones.  Let's see.

12   Give me just a moment.

13          All right.  Mr. Jones, have you received a copy of

14   the presentence report and reviewed it with Mr. Lloyd?

15          MR. JONES:  Yes, Your Honor.

16          THE COURT:  Now, as I understand it, there are --

17   I classify it as three different objections, but arguably

18   four.  One of the objections relates to whether or not the

19   offenses set out in paragraphs 31 and 40 are properly

20   considered as career offender predicate offenses.

21          Second objection relates to the plus four for

22   possession of the firearm during the commission of another

23   felony offense.

24          And then, finally, Mr. Lloyd contends that the

25   Court should depart or arguably vary because of his efforts

US v. Lloyd - Sentence - August 21, 2012

1  at attempting to assist the Government, and I guess it's

2  a -- as a part of that, an upward departure is unwarranted

3  as set out in the presentence report.

4       Other than those matters, are there any other

5  objections to the presentence report?

6       MR. JONES:  There is one brief one, and I'm not

7  sure -- I discussed it with Mr. Meinecke and the probation

8  office.  The maintaining a dwelling count was a continuing

9  offense that ran from January 1, 2011, to March 25, 2011.

10  The cocaine base that was attributed to Mr. Lloyd ran for a

11  full calendar year from March 25, 2011, backwards, and so it

12  included weight amounts that extended back nine months.

13  Collectively, it was a total of 42.5 grams.  If you look at

14  only the time frame in the continuing offense, it would have

15  been about 12 grams.

16       It ends up -- or it may not end up making a

17  difference, Your Honor, depending on the Court's ruling as

18  it relates to the career offender.  For that reason, Your

19  Honor, I'd ask the Court to -- if it's going to take up the

20  objections, to take up the career offender objections first

21  because both the drug weight objection and the gun

22  enhancement objection would not be necessary corresponding,

23  and I would then ask the Court to rule that it wouldn't

24  consider either of those in sentencing under Rule

25  32(i)(3)(B).

         THE COURT:  All right.  And let me -- Mr. Lloyd,
let me ask you first, have you reviewed the presentence
report with Mr. Jones?

         THE DEFENDANT:  Yes, sir.

         THE COURT:  And do you generally agree with the
report with the exception of the objections that
Mr. Jones -- that I have just described?

         THE DEFENDANT:  Yes, sir.

         THE COURT:  All right.  You may have a seat then,
Mr. Lloyd.

         All right.  Mr. Meinecke, at this point I think
the career offender remains -- let me see here --
paragraph 31 offense was a 2000 arrest and 2001 conviction
for felony common law robbery.  Mr. Jones' objection to
that, as I understand it, but clarify in a minute, is that
he was never sentenced to and never actually served more
than a year imprisonment for that offense.

         And then with respect to paragraph 40, the felony
possession with intent to sell and deliver cocaine for which
Mr. Jones -- not Mr. Jones -- Mr. Lloyd received a sentence
of 9 to 11 months in prison, and the probation office has
denoted this as a Class H felony with a prior record level
of four which resulted in a presumptive imprisonment range
with a maximum penalty of 14 months.  That's at
paragraph 40.

1      I have at this point, Mr. Jones, reviewed the

2 pleading with respect to the objections, but I'll hear from

3 you at this time.

4      MR. JONES:  Yes, Your Honor.  This Court is

5 dealing with *Simmons* that's been out since September of last

6 year, almost a year now, and what it did is it took the

7 movement of *Carachuri-Rosendo* and *Rodriguez*, and it said

8 let's not look at hypothetical individuals, let's look at

9 defendants that are in front of us.  And specifically what

10 it said, as it relates to people who had North Carolina

11 prior felony convictions, it said, we're not going to look

12 at just what the conviction was and what that class was.  We

13 have to do some individual determination, and *Simmons* says

14 look at the box that they fit in.  What was the class?  What

15 was the prior record level?  But the only way to do that,

16 Your Honor, is to look at the judgment, and so that's what

17 we do.

18      And we go back, and we have these judgments; and

19 then, according to *Simmons*, we take the actual document that

20 sent the person to jail, and then we ask a hypothetical

21 question.  Well, what could a hypothetical question -- what

22 could a hypothetical defendant in this box have gotten?

23      Paragraph 40, I think, is the perfect example

24 because we have that judgment.  We're told to look at this

25 judgment, and we know that based on the document I'm

holding, which is that judgment, he could not have gone to
jail for more than one year, could not have gone -- could
not have gone for more than 11 months.  This Court is asked
to ask a hypothetical question, what could somebody else
have gotten?  And I don't think that *Rodriguez* and
*Carachuri-Rosendo* lead to that conclusion.

Since we are looking at this document, I think we
should look at this document, and this answers the question
of whether or not this is a felony for federal sentencing
purposes.  And I understand that there's some instructive
case law about how *Simmons* is to be applied.  I believe I've
cited that in my objections to the Court.  But I don't think
that part of fulfilling *Simmons* complies with what the Court
was asked to do, what the Supreme Court has said that we
should be doing, in sentencing defendants.

I think where we have a judgment in front of us,
and there's no doubt about what that judgment says, and
there's no doubt that this defendant, Mr. Lloyd, could not
have gone to jail for more than a year based on this
judgment, that that's where the Court's inquiry should end.
We don't need to ask a hypothetical question when we know
what actually happened to Mr. Lloyd in this case.  That's my
argument as it relates to --

THE COURT:  Ultimately, under your analysis, if
the judgment has been imposed, the judgment is the final

1  determination; and even though he may have been an H felony,

2  prior record level four, for purposes of sentencing, and the

3  presumptive range gives more than 12 -- or the presumptive

4  range plus the other little chart, as I'll refer to it, on

5  the maximum end -- even though that may say in this range

6  this is the maximum sentence, once that judgment and

7  sentence are imposed, that's it, in your analysis.

8           MR. JONES:  That's correct, Your Honor, because

9  asking what the highest somebody could have gotten in the

10  presumptive range for this class and record level seems the

11  same as saying what could a presumptive person have gotten

12  at record level six with the aggravating factors?  We know

13  for certainty what happened in the cases below.  There's no

14  reason to ask an abstraction when we have the actual facts

15  of the judgment.

16           THE COURT:  All right.  Mr. Meinecke?

17           MR. MEINECKE:  Your Honor, as the Court is aware,

18  and I understand that the argument that the defense is

19  putting forth at this point in time, that is not what

20  *Simmons* stands for.  As Mr. Jones has indicated, they have

21  cited this contrary case law in their position paper.  As I

22  understand it, the current law is if the defendant's

23  particularized criminal history is such that he was exposed

24  to a sentence exceeding one year, in other words, he could

25  have received more than one year, it is a felony, a federal

US v. Lloyd - Sentence - August 21, 2012

```
 1    felony for our purposes, and, therefore, the conviction
 2    should count against him.
 3            THE COURT:  And is the same -- is it the same
 4    argument as to paragraph 31, or is there a slightly
 5    different --
 6            MR. JONES:  There is a slightly different argument
 7    there.  This may have more to do with the mechanics of
 8    proving what a person was actually sentenced to.  This
 9    case -- or this paragraph adds the loop of what to do with
10    suspended sentences in North Carolina.  As the Court knows,
11    a defendant in North Carolina at the state court level
12    stands before the Court, and the judge can either impose
13    active time, split time, or a suspended sentence.  A person
14    who gets a suspended sentence does not, in many cases, ever
15    do any active time in jail.
16            You then have to look to see if a person did get
17    active time, and what we have in this case and what's in the
18    discovery here -- I'm not sure what has made its way to the
19    Court, but what's in the discovery in this case is a
20    judgment from several months after the original judgment in
21    which case the defendant elected to serve the suspended term
22    of his sentence.  He was originally sentenced to a term of
23    15 to 18 months, Your Honor, and that was suspended.
24    Afterwards, he elected to serve part of that, on account of
25    a probation violation; but when he did that, he already had
```

US v. Lloyd - Sentence - August 21, 2012

1    293 days credit for a separate offense.

2            And so if the Court looks specifically at

3    paragraph 31, it shows that on July 29, 2003, he elected to

4    serve, and then he was released on January 7, 2004.  That's

5    the amount of time that the judgment in this case shows that

6    he served for this offense.  That is not more than a year.

7    That does not qualify, therefore, for federal sentencing

8    purposes as a felony.

9            The important thing, I think, Your Honor, in

10   determining what's a felony is what have these people had

11   happen to them in the past?  How should they take that

12   information going forward?  And in this case where he has

13   not served more than that year, and the records don't

14   demonstrate that he served more than that year for this

15   offense, I don't believe that should be used as a valid

16   career offender predicate at his federal sentencing, Your

17   Honor.

18           THE COURT:  Would you say at this point that your

19   argument depends on -- your argument -- to accept your

20   argument requires the Court to find that there's a slight

21   difference between what the Supreme Court held in the

22   *Carachuri-Rosendo*, if I've said that correctly, and those

23   cases and what the Fourth Circuit has ultimately held in

24   *Simmons*, or do you contend that *Simmons* is not binding on

25   this set of facts and to answer the question you go to

US v. Lloyd - Sentence - August 21, 2012

1   *Carachuri* and, therefore -- do you follow my question?

2        MR. JONES:  I do, Your Honor.  I think what I

3   would say is that *Rodriguez* started the recognition that we

4   should not be looking at hypotheticals, and

5   *Carachuri-Rosendo* ratified that and said don't look at

6   abstractions we have facts in front of us.  And what *Simmons*

7   did is it said let's look at the North Carolina context, and

8   it tried to apply it.  It said no longer assume what happens

9   to a hypothetical person.  Go to the records.  Go to the

10  judgments.  Look at what this person was subject to based on

11  the documents.

12        And what I'm saying is if we fulfill

13  *Carachuri-Rosendo* and *Rodriguez* and look at the documents,

14  since we're already instructed to go to them, we should do

15  that analysis with the documents.

16        THE COURT:  And no more hypothetical defendant.

17        Well, I will find that I to a certain extent -- I

18  don't know whether -- I can't say that I certainly

19  understand -- well, I certainly understand your argument,

20  and I think dealing with a hypothetical defendant at varying

21  levels -- under *Harp*, it was originally the maximum any

22  defendant could receive under the box for the specific class

23  felony without regard to criminal history.  Then *Simmons*, in

24  applying *Carachuri-Rosendo* and other cases, came back and

25  held, no, it's the applicable class of felony limited by the

1   defendant's prior criminal history and the presumptive range

2   in that box.  I assume if there were stipulations to the

3   aggravated factors, then maybe you could get to the

4   aggravated box in that fashion.

5           But as -- and so I am going to overrule the

6   objection and find that under *Simmons* and subsequent

7   precedent under the Fourth Circuit that I am to apply the

8   hypothetical -- I'm a little reluctant to refer to it as a

9   hypothetical defendant, although I understand your point on

10  that issue, but I am to -- in determining the statutory

11  maximum for the offense of conviction, I am to use the

12  presumptive range for the class of felony within the

13  appropriate criminal history category for Mr. Lloyd in this

14  case, that is, the specific defendant.

15          And with respect to paragraph 31, that was a Class

16  G felony with a prior record level of three, and that

17  presumptive imprisonment range carried a maximum penalty of

18  20 months; therefore, resulting in a proper classification

19  of -- or proper categorization of that conviction as a

20  career offender predicate.

21          And then with respect to paragraph 40, I find as

22  set forth in the presentence report.  And although it was a

23  Class H felony, the defendant's prior record level was a

24  four resulting in a presumptive imprisonment range with the

25  maximum penalty as 14 months; therefore, qualifying that as

US v. Lloyd - Sentence - August 21, 2012

1    an appropriate career offender predicate offense.

2              So I will find -- I will overrule the objection.

3    I will find that Mr. Lloyd is properly classified as a

4    career offender for purposes of this guideline calculation.

5              And, let's see.  With respect to the remaining

6    objection, that is, the plus four that was applied, I will

7    say, Mr. Jones, in this case absent -- Mr. Meinecke, I guess

8    I should say this for your benefit.  It's really not clear

9    to me exactly who controlled the premises where the gun was

10   found -- let's see -- 9100 Tartan Road.  Somewhere in here I

11   did -- I think it was in the pleadings, but I also thought

12   it was somewhere else that that was the mother's residence.

13   Although there was ammunition spread out all over the house,

14   at least the way I read the charge, it did look to me like

15   the drugs were in one bedroom, and the .32 caliber pistol

16   was found under the mattress in another bedroom.  That

17   bedroom did contain tax documents belonging to the

18   defendant.  But I thought somewhere --

19         MR. JONES:  I think I might be able to offer what

20   I think Mr. Meinecke would agree, there were no actual --

21   March 25 was the day the search warrant occurred, and there

22   were no controlled substances found in the home at that

23   time.  There had been a controlled purchase on March 21,

24   four days earlier, in which there was one rock, which, I

25   guess, being generous we could say maybe a 10th of a gram.

1    There was no indication about a firearm being present at

2    that time.  That address is occupied both by Mr. Lloyd and

3    by Karen Lloyd, his mother, so the Court was right about --

4              THE COURT:  It was in paragraph 63.  He was

5    residing with his mother at 9100 Tartan Road in Laurinburg.

6    So I can't say that I'm satisfied that the gun, the time of

7    the possession, the criminal conduct, and control of the

8    premises clearly suggests that the plus four was properly

9    applied.  So I am applying the career offender adjustment,

10   but I am -- at least for my purposes, the alternate

11   calculation is really moot at this point, and I'm not

12   inclined to make any findings or rest any sentence on his

13   possession of the firearm in connection with another felony

14   offense.  Do you understand that?

15             MR. MEINECKE:  And as the Court has said, given

16   the fact that the Court is going to apply the career

17   offender designation, we don't wish to be heard on the

18   Court's finding with respect to the "in connection with."

19             THE COURT:  All right.  I'll just -- I'll leave

20   that -- I'll find that it's moot for purposes of this

21   sentencing hearing.

22             Based upon the Court's finding with respect to the

23   career offender adjustment, I will adopt the presentence

24   investigation report without change.  I'll note neither

25   count of conviction carries a mandatory minimum sentence.

US v. Lloyd - Sentence - August 21, 2012

1   The resulting advisory guideline calculation is as follows:

2            A total offense level of 29.

3            Criminal history category of six.

4            A guideline imprisonment range of 151 to 188

5   months.

6            A supervised release range of one to three years

7   as to both Counts One and Three.

8            A fine range of 15,000 to $500,000.

9            And a special assessment of $100 as to each count

10  is mandatory.

11           Will there be any additional evidence, Mr. Jones?

12           MR. JONES:  Yes, Your Honor.  I do have one

13  portion of the argument I was going to make towards the

14  3553(a) factors that included the presentation of four short

15  letters from supporters and family members.  I'll hand those

16  up at the appropriate time.

17           THE COURT:  All right.  If you don't mind, I'll go

18  ahead and take them and have a look at them.

19           MR. JONES:  Yes, Your Honor.  I'll tell the Court

20  that I've handed a copy also to Mr. Meinecke.

21           THE COURT:  All right.  I'll hear from you at this

22  time as to what constitutes a sentence that is sufficient

23  but not greater than necessary taking into consideration the

24  advisory guideline calculation as well as all other factors

25  set forth under 18 USC Section 3553.

US v. Lloyd - Sentence - August 21, 2012

1          MR. JONES:  Yes, Your Honor.  Looking at the

2    advisory guideline range of 151 to 180 months in this case,

3    I believe a sentence of 120 months, which is a downward

4    variance, is sufficient and it's no greater than is

5    necessary to serve the goals of 3553(a) in this case for

6    Mr. Lloyd.  He is an unusual individual and there are

7    unusual characteristics about this case that I think warrant

8    it.

9          I'd like first to turn the Court's attention

10   starting at paragraph 78 of the presentence report to what I

11   would describe as a lengthy history of legitimate work

12   throughout his life, throughout his adult life.  Often in

13   these cases, we see people who have had no legitimate work

14   experience and support themselves solely by illegitimate

15   means, such as selling drugs.  And I know we have an element

16   of that in this case, Your Honor; but starting in 1999,

17   Mr. Lloyd has worked nearly every single year.  He's worked

18   in the service industry in restaurants, at hotels, at Ellery

19   Homestyles, at the packing plant in Laurinburg, and he has

20   throughout his entire adult life maintained jobs and worked

21   hard.

22          THE COURT:  He's got something I've never seen

23   before.  It's like -- I don't know any other way to describe

24   it.  Each year there's a burst of employment for two, three,

25   four, five months, and then it comes to an end, and then he

```
 1    comes back the next year.  That's a very unusual employment
 2    history.  I'm not sure what to make of that.
 3              MR. JONES:  Well, I think what the Court should
 4    make of it is it should read it right alongside with what's
 5    laid out in the presentence report as his drug abuse
 6    problems.  It's hard, as we know, to do both.  It's hard to
 7    function when you're using drugs.  But what we see in
 8    Mr. Lloyd is a sustained effort to participate in society,
 9    and Mr. Lloyd is not -- when we start looking at the conduct
10    that's involved here, Mr. Lloyd's not a large-scale drug
11    trafficker who is buying kilos of cocaine and cooking them
12    into crack and selling them for mass profit.
13              Mr. -- around the time of the offense, he was
14    working at the We Pack plant in Laurinburg and then at
15    Ellery Homestyles.  He was a low end user who had a serious
16    drug problem, and he used and had powder and cocaine base.
17    He appears to me, Your Honor, to be an individual who was
18    using and selling, and that's what he told the officers when
19    they arrested him is that I have some, I use some, I sell
20    some.  There's a demonstrated work history here that I think
21    is unusual and I think shows some -- gives the Court some
22    insight as to who Mr. Lloyd is.  He's not a person who has
23    given up and is simply going to do what he wants to do.
24              He is unusual in the sense that he's incredibly
25    polite and pleasant to deal with and truly a loving person.
```

US v. Lloyd - Sentence - August 21, 2012

1  This Court actually noted at the Rule 11 plea hearing how

2  pleasant it was to conduct the hearing with him, and that's

3  the experience that I've had working with him.  The officers

4  down there that had a lot of experience with him, and they

5  describe him as a gentleman.  Every time they go to arrest

6  him for these offenses that show up, he's always been polite

7  and courteous, and he's never expressed anything other than

8  that throughout these proceedings, and I think that's

9  unusual as well.

10         The drug abuse is a serious issue, Your Honor, and

11  the presentence report notes it's been going on for a long

12  time.  He has had several attempts to get it fixed in the

13  state Department of Corrections.  I don't know why those

14  haven't taken, and part of those failures in the past, I

15  think, have led us to where we are now, but I do think that

16  is a factor to consider.

17         In addition to his work history along with the

18  drug habit, he has unusual family support.  Not only is he

19  supported by his family -- and his mother Karen Lloyd and

20  Meagan Lloyd are here to support him and have been a huge

21  support throughout all these proceedings, but also letters

22  that the Court has, but he also -- the support goes the

23  other way.  He supports them, and he supports his daughter

24  who's three years old.

25         This presentence report notes at paragraph 62 that

US v. Lloyd - Sentence - August 21, 2012

1  he's always paid his child support order.  And it's not a

2  lot of money at $50 a month, but there's plenty of people

3  who don't pay that, and he did pay that even when the

4  presentence report demonstrates that he didn't have a job.

5  So there are legitimate and illegitimate ways to make money

6  in this society, and we know he was doing both.  I'll

7  suggest to the Court that there were some good things that

8  were being done with the legitimate money he was making.

9  In this case, Your Honor, from the very beginning

10  Mr. Lloyd has done everything he could to assist the

11  Government.  Before this became a federal case, he talked

12  with the local agents down in Scotland County, maybe it was

13  the sheriff or maybe it was the State Bureau of

14  Investigation, some of the local authorities, and he gave

15  them detailed information about his sources, prices, and he

16  gave their names, where they lived, who they dealt with.

17  Nothing came of that information as far as we're aware.  I

18  understand people have been arrested, but that information

19  is not of assistance to the federal government at this time

20  and no federal prosecutions have been made of it.

21  He also, when the federal charge was brought down

22  in January of this year, the very first thing he did was we

23  set up a meeting with, again, the local officers, and he

24  spoke again about everything he knew, every person, all the

25  sources, and all their contacts, and that information is

1    always considered to be credible information.  Since he's

2    made his way into the marshal's custody, Your Honor, he's

3    kept his ears open, and he was debriefed in August of this

4    year about information he'd learned firsthand from

5    individuals there that committed a number of serious

6    robberies in the Greensboro area.  I understand he's going

7    to be debriefed coming up in the next week or so regarding

8    the RICO case that's currently going on.

9            So he's done everything he could, Your Honor, but

10   there is in this case an unfortunate circumstance, and it's

11   something of a despaired opportunity, and that is he lives

12   in Scotland County, and there isn't a very large federal

13   presence in Scotland County.  If this were a case that was

14   in Durham or Greensboro or Winston-Salem/Forsyth, there

15   would be many more opportunities, I believe, for his

16   information to be used by the federal authorities.  There is

17   not this presence down in that part of the state, in that

18   part of the Middle District.  There tend to be, in my

19   experience, more one-off kinds of cases.  And so the exact

20   same information that in another county would have led to

21   excellent assistance to the Government, in this case, simply

22   because of his location and because of the federal presence

23   down there, or lack thereof, it hasn't played out that way.

24           I think what's more important is not that it

25   hasn't helped the Government, but what it shows about

Mr. Lloyd and what he's doing.  He's a person who's always
tried to work.  He's a person who's helped his family.  He's
always tried to help his family, and from day one he's tried
to help the Government in this case.

If he is given a sentence even at the bottom of
the advisory guideline range of 151 months, that's
approximately 10 times greater than any other sentence he's
ever received.  I suggest to the Court that that sentence in
this case would be more than is necessary to satisfy the
sentencing goals.  A 120-month sentence that I've asked for,
Your Honor, is a very serious sentence.  It's a 10 year,
double digit sentence.  It's far greater than any amount of
time, and it takes him away from his family at a critical
time with a young daughter who he loves and supports.

And it does demonstrate -- it does serve the
purpose of deterrence, both specific and general.  It does
provide just punishment for selling in this case what was,
as far as we know, one rock of crack.  And he did admit to
the firearm in this case, possessing it, you know, on the
facts the Court has already talked about.  He's demonstrated
acceptance of responsibility, but he's demonstrated
something more in his conduct since this case got started --
since the federal case got started, and I think that's
worthy of consideration, Your Honor.

In addition to that, I'd ask the Court to

1    recommend that he be allowed to participate in a drug abuse

2    treatment program.  I believe he may be disqualified because

3    of the firearm possession count as well, but I'd ask the

4    Court to recommend it anyway because I know there's a

5    vigorous battle going on in the BOP about whether or not

6    precluding individuals with 922(g) counts is appropriate.

7    So I'd ask the Court to make that recommendation.

8             I'd also ask that the Court allow him to be placed

9    and recommend that he be placed in a facility as close to

10   his home in Scotland County as he -- as the Court can and as

11   the BOP can.

12            I would for all those reasons ask the Court to

13   impose 120 months for Mr. Lloyd for the two counts of

14   conviction here.

15            THE COURT:  All right.  Thank you, sir.

16   Mr. Meinecke?

17            MR. MEINECKE:  Your Honor, we'd ask the Court to

18   impose a sentence not less than the bottom end of the

19   advisory guideline range, which, as I'm flipping my pages, I

20   believe is 151 months.

21            THE COURT:  151 to 188.

22            MR. MEINECKE:  Yes, sir.  The bottom of that range

23   would be 151, and by my math, which is always suspect, that

24   would represent about a 20 percent reduction from the top

25   end of the advisory guideline range; and, frankly, I'm a

US v. Lloyd - Sentence - August 21, 2012

1   little bit hesitant to voice our position in those terms

2   since it does represent a 20 percent break.  If the Court

3   will bear with me, I'll go through the reasons that we

4   believe that sentence is appropriate and why it gives me

5   some pause to recommend a sentence at the low end.

6          First, we'd ask the Court to take into

7   consideration the defendant's criminal history.  As you flip

8   through the pages of the presentence report, the Court can

9   see, and I'm sure already has seen, that there are a number

10  of prior convictions involving crimes of violence.  There's

11  a breaking and entering conviction.  There is a misdemeanor

12  conviction for assault on a female.  There's a prior

13  conviction for a common law robbery which involved the use

14  of a firearm in order to threaten an individual to take

15  property from that person.

16         In addition to that criminal history related to

17  crimes of violence, there is long and protracted several

18  different instances of prior convictions for controlled

19  substance offense.  As the Court knows, those are considered

20  serious offenses.

21         On top of that, stepping back for a moment, just

22  in the abstract, what we are struck with when you look at

23  this criminal history, is basically from the time the

24  defendant was 16 years old, it's difficult to find any

25  appreciable period of time in which the defendant wasn't

1    serving some sort of a sentence, wasn't under the
2    supervision of some court or just, in general, was not in
3    some sort of trouble.

4             Again, quickly looking through it, I think a
5    couple of years is the longest period of time I saw when I
6    looked through this history.  So it's not just that there
7    are several different instances of convictions related to
8    crimes of violence or substance related convictions, but the
9    defendant has essentially been in trouble.  He's been unable
10   to comply with the laws of the state or the federal
11   government since the time he was 16 years of age.

12            In addition, we'd ask the Court to take into
13   consideration the particular offense conduct.  That's not
14   just the conduct as it relates to controlled substances, but
15   the Court understands from looking at the factual basis and
16   the presentence report that there's some evidence related to
17   this firearm.  As you've already heard this afternoon, the
18   defendant admitted at some point in time -- I think his
19   exact words were that he handled the firearm on a previous
20   occasion; and interestingly, or at least interestingly to
21   the Government, included in the presentence report is
22   information related to the fact that when the residence was
23   searched, there was ammunition of multiple different
24   calibers.  If I wrote this down correctly there was --
25            THE COURT:  All over the place.


US v. Lloyd - Sentence - August 21, 2012

```
 1              MR. MEINECKE:  -- .22 caliber, .25 caliber, .32
 2    caliber, .38 caliber, .45 caliber.  Again, only one firearm
 3    was recovered, but one would -- one asks, you know, what is
 4    the purpose of having ammunition of all these different
 5    calibers if you only have a firearm of one particular
 6    caliber?  Again, there's not evidence beyond that, but it
 7    does concern the Government.  There's certainly an inference
 8    to be drawn after the defendant says he'd handled the
 9    firearm and you have all this different kind of ammunition
10    that -- and given the defendant's history of use of firearms
11    in perpetrating other crimes, I'll just -- suffice it to say
12    that the Government is concerned by that evidence.
13              On top of that, I fully agree with Mr. Jones.  I
14    couldn't agree more that from the outset, even prior to the
15    onset of the federal involvement in this case, the defendant
16    has cooperated with the Government.  He's provided
17    information about a number of possible criminal offenses
18    that are being investigated by more than one law enforcement
19    agency, and it's accurate to say at this point in time none
20    of those investigations have come to fruition.  I don't
21    believe anybody has yet been arrested.
22              However, taking that into account, I get back to
23    where I started.  The Court knows from its experiences that
24    in cases where defendants cooperate and the Government files
25    a motion under -- a 5K motion for reduction of sentence,
```

```
 1    typically those recommendations range anywhere from 20 or

 2    25 percent up to 50 percent, and the 50 percent is almost

 3    entirely reserved for individuals that actually have to come

 4    into the courtroom and testify.

 5            So when I started out this sentencing argument by

 6    saying we'd ask the Court not to go lower than the low end

 7    of the advisory guideline range, that is with the

 8    understanding that the bottom end of the advisory guideline

 9    range already represents a 20 percent reduction from the

10    high end that probation has recommended; and but for the

11    defendant's cooperation, that's the sentence I would argue

12    to the Court based upon the offense conduct and his criminal

13    history.

14            So if I haven't made it too complicated, what I'm

15    saying is that we think that recommending a 20 percent

16    reduction off of what we would otherwise argue for is a

17    sufficient acknowledgment of the defendant's cooperation

18    that he's provided at this point in time, and we'd ask the

19    Court not to impose a sentence less than 151 months.

20            THE COURT:  All right.  Mr. Jones, one thing that

21    I was sitting up here thinking about, the child support

22    factor did strike me exactly right.  It's not often that

23    people are current on child support, but I am left with that

24    unusual dichotomy of, at least for some periods of life,

25    that $50 a month was coming from the sale of drugs, and does
```

1  that -- does the child support -- current in child support

2  mitigate, nonfactor, or aggravate it based on where the

3  money's coming from?

4      MR. JONES:  I believe it mitigates, Your Honor.

5  It's not right to break the law.  It's not right to sell

6  drugs.  But I think there are shades of mitigation, and

7  there's shades of aggravation, and a person who's selling --

8  there are different ways in which one can sell drugs.  You

9  can get involved to different degrees and different extents,

10  and I think the laws reflect that if you look at different

11  substances.  If you look at the way we treat marijuana and

12  some drugs, we hardly punish in this state simple users of

13  it.  We also greatly punish people who traffic in it.

14      THE COURT:  School zones, guns, with or without

15  guns, etc.

16      MR. JONES:  That's right.  So there's a gradation

17  there.  And I think if you look at someone who has small

18  amounts and selling small amounts and is doing good things

19  with them, that falls, to me, in the very low end.  I

20  mean -- I don't know if you have to say it mitigates, Your

21  Honor, but I think it gives you some insight as to who this

22  individual is that's sitting next to me, and that

23  distinguishes him from somebody who's a key player in a

24  large trafficking organization.  And when you look at those

25  against each other, I would say, yes, that does mitigate in

that sense.

What I think about, Your Honor, how does -- it's difficult to say what an additional 31 months in this case, how that protects or how that shows more deterrence, how that punishes and shows appropriate punishment more. I think 151 months would be sufficient, but I also think it would be greater than necessary. I think 121 months or 120 months would be sufficient and no greater than necessary.

The advisory guidelines are just that. They're a good place to start, for the courts to look at the individual who's in the chair next to me and see who we see in the presentence report, and then ask of him what would be sufficient and not greater than necessary; and I contend, Your Honor, that 120 months would do that for Mr. Lloyd and satisfy the 3553(a) purposes of sentencing.

THE COURT: All right. And, by the way, you said sitting behind him was his mother and did you say Meagan?

MR. JONES: Yes, Meagan.

THE COURT: Who is she?

MR. JONES: I don't believe they are -- I would describe them as common law marriage, Your Honor.

THE COURT: Okay. I'm sorry, I missed that. I didn't put the name together in the presentence report. Ms. Lloyd, Meagan, thank you both for coming up here today. I know that it's a long ways from Laurinburg to Greensboro,

```
 1   and it's the middle of the week, and it's the middle of the
 2   afternoon pulling you away from your work and various other
 3   responsibilities, but it does mean a lot to me that you all
 4   would take the time to come up here for Mr. Lloyd today, and
 5   I know it means a lot to him, too.  So thank you both for
 6   your time.
 7           Mr. Lloyd, you're not required to say anything.
 8   If you choose to remain silent, your silence will not be
 9   held against you in any way whatsoever, but you do have the
10   right to address the Court before any sentence is imposed.
11   And if you wish to address the Court, now is the appropriate
12   time.
13           THE DEFENDANT:  No, sir.
14           THE COURT:  All right.  Let me see probation up
15   here briefly.
16           (Bench conference with probation.)
17           THE COURT:  Well, in Mr. Lloyd's case, taking into
18   consideration the advisory guideline calculation as well as
19   all other factors set forth under 18 USC Section 3553, I
20   find that a sentence within the guideline range of 151
21   months, the low end of the guideline range, is sufficient
22   but not greater than necessary.
23           In fashioning that sentence, I have taken into
24   consideration the advisory guideline calculation, the
25   factors set forth under 18 USC Section 3553, and the
```

US v. Lloyd - Sentence - August 21, 2012

1    arguments of counsel in this case.  Mr. Jones makes a very

2    persuasive case on behalf of Mr. Lloyd for a variance in the

3    case, pointing out, I think, fairly and accurately

4    Mr. Lloyd's cooperation with the United States in this

5    matter, even though that has not become or risen to a level

6    for which substantial assistance pleadings would otherwise

7    be filed.

8              Furthermore, I do weigh very heavily the fact that

9    Mr. Jones [sic] has been -- is current on his child support

10   and does appear in many respects as reflected by the letters

11   and other factors to be a very caring individual and one who

12   is at least accepting and acting appropriately upon some of

13   his personal responsibilities, and I commend Mr. Jones [sic]

14   for those -- all of those matters.

15             However, I do find that in looking at the history,

16   and particularly -- or the nature and circumstances of the

17   offense, as well as the history and characteristics of the

18   defendant, particularly the defendant's prior criminal

19   record, that Mr. Jones' [sic] -- the repeated nature of

20   Mr. Jones' [sic] criminal activity, all as pointed out by

21   the probation officer in the justification section as well

22   as the -- taking into consideration Mr. Lloyd's prior past

23   criminal conduct and, therefore, although not scientifically

24   certain, but trying to determine the risk of Mr. Lloyd

25   continuing to commit these offenses of the same type that he

US v. Lloyd - Sentence - August 21, 2012

1    has committed in the past, meaning the need to protect the

2    public from further crimes of the defendant.  Mr. Lloyd's

3    prior sentences were insufficient to deter his criminal

4    conduct, as were arrests.  I think at least in one instance

5    Mr. Lloyd was committing new criminal conduct after having

6    been arrested for the offenses which were -- ultimately

7    became the charges in this case.

8            So taking into consideration all of those factors,

9    but predominantly the seriousness of Mr. Lloyd's criminal

10   history by its repeated nature as well as the need to

11   protect the public from further crimes of the defendant, I

12   find that a sentence of 151 months is sufficient but not

13   greater than necessary.  So I will impose that sentence

14   followed by three years of supervised release.

15           Let me see, I will not impose a fine.

16           And I will recommend that Mr. Lloyd be designated

17   to a facility as close to his home as possible; that he

18   receive intensive substance abuse treatment; and that he be

19   designated to a facility where he may participate in the

20   inmate financial responsibility program.

21           Supervised release will be on the terms and

22   conditions set forth in the presentence report.

23           Mr. Jones, is there anything further you wish to

24   address before I impose that sentence?

25           MR. JONES:  No, Your Honor.  After you impose it,

1    I would note there's a count to be dismissed.

2           THE COURT:  All right.  Mr. Lloyd, if you will

3    stand then, please, sir.  In Case No. 1:12CR23-1, United

4    States of America versus Antwan O'Brian Lloyd, as to

5    Count One, it is hereby ordered that the defendant is

6    committed to the custody of the Bureau of Prisons for a term

7    of 120 months followed by three years of supervised release.

8    A special assessment of $100 is mandatory, is due and

9    payable immediately, and is hereby imposed.  A fine is

10   waived because of defendant's inability to pay, and

11   restitution will not be imposed in this case.

12          The Court does recommend to the Bureau of Prisons

13   that the defendant be designated to a facility as close to

14   his home as possible; to a facility in which he may

15   participate in an intensive substance abuse treatment

16   program; and, furthermore, to a facility where he may

17   participate in the inmate financial responsibility program

18   for the purpose of paying any monetary penalties.

19          As to Count Three, it is hereby ordered that the

20   defendant is committed to the custody of the Bureau of

21   Prisons for a term of 31 months.  That sentence is imposed

22   to run consecutively to the sentence imposed as to Count One

23   followed by three years of supervised release which shall

24   run concurrently.  A special assessment of $100 is due and

25   payable immediately and is imposed as to Count Three.

US v. Lloyd - Sentence - August 21, 2012

1        During the period of supervised release, it is

2   ordered that the defendant shall comply with the standard

3   terms and conditions of supervised release.  In addition to

4   the standard terms and conditions, the following special

5   conditions are imposed:

6        One, the defendant shall provide any requested

7   financial information to the probation officer.

8        Two, the defendant shall submit to substance abuse

9   testing at any time as directed by the probation officer.

10  The defendant shall cooperatively participate in a substance

11  abuse treatment program which may include drug testing and

12  inpatient or residential treatment and pay for those

13  treatment services as directed by the probation officer.

14  During the course of any treatment, the defendant shall

15  abstain from the use of any alcoholic beverages.

16       And, three, the defendant shall submit his person,

17  residence, office, vehicle, or any property under his

18  control to a warrantless search.  Such a search shall be

19  conducted by a United States Probation officer at a

20  reasonable time and in a reasonable manner based upon a

21  reasonable suspicion of contraband or evidence of a

22  violation of a condition of release.  Failure to submit to

23  such a search may be grounds for revocation, and the

24  defendant shall warn any residents that his premises may be

25  subject to such searches.

1          Mr. Lloyd, you do have the right to appeal the
2   sentence that I have imposed in this case.  If you choose to
3   appeal, notice of appeal must be filed within 14 days of the
4   entry of judgment.  If you wish to appeal and cannot afford
5   the services of counsel, counsel will be appointed to
6   represent you.  Mr. Jones will be responsible for advising
7   you with respect to your right to appeal and filing a notice
8   of appeal if you instruct him to do so.

9          Anything further, Mr. Jones?

10          MR. JONES:  I move to dismiss Count Two, Your
11  Honor.

12          THE COURT:  The remaining counts are dismissed
13  pursuant to -- any remaining counts are dismissed pursuant
14  to the terms of the plea agreement.  Mr. Meinecke?

15          MR. MEINECKE:  Your Honor, we would ask for a
16  destruction order with respect to the firearm, ammunition,
17  controlled substances, and drug paraphernalia once the
18  period for appeals has expired.

19          THE COURT:  I'll order the destruction of any
20  controlled substances and ammunition seized at the
21  conclusion of any appeals period.  I'll order the firearm be
22  returned to a lawful, rightful owner if one can be located
23  upon the exercise of reasonable efforts by the United
24  States; and, if not, that the firearm be destroyed at the
25  conclusion of the appeals period.

| | |
|---|---|
| 1 | MR. JONES:  And, Your Honor, I don't mean to -- |
| 2 | when we say "the conclusion of the appeals period," do we |
| 3 | mean the conclusion of direct appeals and time for filing |
| 4 | cert or also a one-year AEDPA. |
| 5 | THE COURT:  Yeah, I generally consider the appeals |
| 6 | period to be the direct appeals period to the Fourth Circuit |
| 7 | and petition for cert time.  Is there some reason I should |
| 8 | extend that out? |
| 9 | MR. JONES:  If I could just ask that we have one |
| 10 | year additional for AEDPA in case my client should wish to |
| 11 | file a 2255 making some constitutional claim.  I mean, it's |
| 12 | an easy -- it's an easy amount to add on to direct appeals. |
| 13 | It's known, and we see a lot of 2255s. |
| 14 | THE COURT:  Mr. Meinecke? |
| 15 | MR. MEINECKE:  It does create the additional |
| 16 | issue -- in this case, the evidence is not voluminous.  But, |
| 17 | of course, this is -- if this is the pattern that we follow, |
| 18 | then eventually we do have that issue to confront.  I'd ask |
| 19 | the Court to deny the request and leave the one-year time |
| 20 | period for direct appeals. |
| 21 | THE COURT:  The burden is going to fall to the |
| 22 | agency because they're the ones that are storing the -- I |
| 23 | guess, I assume the agency's the one that's still got the |
| 24 | evidence in storage. |
| 25 | MR. MEINECKE:  Yes, sir. |

US v. Lloyd - Sentence - August 21, 2012

1          MR. JONES:  I don't think for this case we need to

2     concern ourselves too much with long-term storage issues.

3     We're talking about a tiny amount here, and --

4          THE COURT:  Yeah.  Here's what I'm going to do.

5     I'm going to leave it as it stands right now to the standard

6     through the appeals period; but, Mr. Jones, if -- I

7     certainly -- I won't sign the judgment for a little while.

8     If you want to file something and think you can convince me

9     that it needs to be longer than that -- and I'm not saying

10    you can't.  I see the merit immediately of saving everything

11    until everything is resolved.  On the other hand, if I start

12    in this case, then it'll start in every case, and we will

13    end up with two, three, four years of material stored up for

14    a while.

15         MR. JONES:  I'll tell the Court I have nothing

16    further to file.  I do think we'll end up with one year more

17    because that's how long you get under AEDPA.  I think

18    there's a hypothetical question about if you could overcome

19    your bars, your procedural bars on your 2255 --

20         THE COURT:  I know --

21         MR. JONES:  -- in theory, the time is forever.

22    But I'm just asking until that one-year time period to

23    initially file the 2255.

24         THE COURT:  And if the appeal is filed, then

25    you've got all that appeals time lumped in there, too, so

US v. Lloyd - Sentence - August 21, 2012

```
 1  you could end up with the one year --
 2           MR. JONES:  But that's part -- as I understand,
 3  Your Honor, that's already part of the order.
 4           THE COURT:  Right.  Oh, I see what you're saying.
 5  If he appeals, we're going to count that anyway.  I'm going
 6  to decline your invitation on that issue, but --
 7           MR. JONES:  Yes, Your Honor.
 8           THE COURT:  -- I see the concern, and I'll
 9  certainly -- there's good reason to do it.  Don't give up
10  just yet.  Maybe there'll be some good reason for it.  I'm
11  going to decline today, but we'll see.
12           Anything further?
13           MR. MEINECKE:  Not on behalf of the Government,
14  Your Honor.
15           THE COURT:  All right.  Mr. Lloyd, good luck to
16  you, sir.
17           THE DEFENDANT:  Thank you.
18           THE COURT:  We'll stand in recess.  We'll stand
19  adjourned until tomorrow morning at 9:30.
20           (At 3:36 p.m., break taken.)
21
22
23
24
25
```

US v. Lloyd - Sentence - August 21, 2012

```
 1                          *  *  *  *  *

 2                    C E R T I F I C A T E

 3

 4        I, JOSEPH B. ARMSTRONG, RMR, FCRR, United States

 5   District Court Reporter for the Middle District of North

 6   Carolina, DO HEREBY CERTIFY:

 7           That the foregoing is a true and correct transcript of

 8   the proceedings had in the within-entitled action; that I

 9   reported the same in stenotype to the best of my ability;

10   and thereafter reduced same to typewriting through the use

11   of Computer-Aided Transcription.

12

13

14                              _____

15   Date:   01/25/13           Joseph B. Armstrong, RMR, FCRR
                                 United States Court Reporter
16                              324 W. Market Street
                                 Greensboro, NC  27401
17

18

19

20

21

22

23

24

25
```

US v. Lloyd - Sentence - August 21, 2012